DENA CONSTRUCTION COMPANY and
SOUTHERN FARM BUREAU CASUALTY
INSURANCE COMPANY v. Hayden HERNDON

78-132                                              575 S.W. 2d 155

Opinion delivered January 8, 1979
(Division I)

*David Hodges*, of *Hodges & Hodges*, for appellants.

*John M. Belew* and *Phillip Farris*, for appellee.

Conley Byrd, Justice. The Workmen's Compensation Commission found that Hayden Herndon's heart attack suffered on April 25, 1974, arose out of and in the course of his employment with appellant Dena Construction Company. The Commission also found that as a result of the heart attack, Hayden Herndon was permanently and totally disabled. The circuit court affirmed the Commission. For reversal appellant Dena Construction Company and its carrier Southern Farm Bureau Casualty Insurance Company raise the issues hereinafter discussed.

The record shows that Hayden Herndon, age 50 with a fifth grade formal education, had worked most of his adult life in the food industry — *i.e.* either as a cook in a restaurant or as the owner and operator of a restaurant. In his early years Hayden Herndon had worked on a delivery truck and in the lumber business for one of his brothers. He lost his lease on his restaurant in St. Joe, Michigan and moved back to Desha, Arkansas with the idea of purchasing a restaurant in Batesville, Arkansas. While the negotiations for the Batesville restaurant were pending, Hayden Herndon took a job with Dena Construction Company. While working with Dena Construction Company, he assisted his brother-in-law, the job foreman, in laying some underground cable telephone lines. Part of his duties required him to use a jackhammer for a portion of each day. While using the jackhammer on Wednesday, April 24, Hayden Herndon noticed a tingling in his left arm. While visiting his brother in the hospital that night Hayden Herndon experienced a "lightness in the head" and felt "kind of dizzy." Between 12:30 a.m. and 1:00 a.m., following his visit with his brother, Hayden Herndon experienced some pain in his chest and arms. Mr. Herndon looked so bad the next morning that his wife begged him not to go to work but since and his brother-in-law only lacked a little finishing up, he went on to work. While J. D. Ash was gone for dynamite, Hayden Herndon used the jackhammer. When J. D. Ash returned about 11:20 a.m. with the dynamite, Hayden Herndon looked so bad that J. D. Ash

urged him to go to the doctor. However, they stopped for lunch which Mr. Herndon shortly regurgitated. Following lunch J. D. Ash asked Sammy Murphy to take Hayden Herndon to the Cleburne County Hospital where he was treated for indigestion and released. Mr. Herndon returned to the job site doing only light work such as driving a pick-up. Back at the job site the pain in his arm and chest started coming much more often and became almost unbearable. Hayden Herndon left early for home but the pain became so severe that he had difficulty in turning the steering wheel on his pick-up and in fact had to stop on his way home because of the pain. Upon reaching home Herndon's wife rushed him to Batesville where Dr. Bob Smith immediately placed him in intensive care.

Dr. Bob Smith stated that Herndon's heart attack resulted from an atheromatous plaque in a coronary artery. It was his opinion that the heart attack probably resulted from the stressful situation of using the jackhammer and that Herndon was not capable of performing any gainful employment.

**Dr. Phillip Cullen,** after examining Hayden Herndon, gave a diagnosis of arteriosclerotic heart disease with a history of myocardial infarction in April 1974, and three vessel heart disease. With reference to his pains on the night of Wednesday, April 24th, Dr. Cullen testified:

> "I think the man was having angina the night before alright from the history that was brought out, he was having symptoms surely, premonitory of a heart attack and I think always in going back to it it's so easy to answer these things while of course maybe he would not even have had a heart attack but on the other hand it is likely that he would have had one sometime within days, weeks, or months or something, since after this that it was known about his back vessel. I think that it hurried it up, as I said, because the scene was already there, the stage was already set and if it had not happened that day I think it would have happened. I would not have advised Mr. Herndon if he had been in my office on the evening of the 24th and he described to me the symptoms that he had at that time to go out and run a

jackhammer the next day. I would advise him, on the date that I saw him, to avoid activities that were strenuous enough to produce chest pains, and that would include activities of an emotional and a mental nature also."

**Dr. Cullen** testified that Herndon should be restricted to light work — *i.e.* jobs where he was not required to lift more than five pounds, jobs in which he could change positions frequently and jobs that did not involve extremes or temperature or fatigue. He also recommended Herndon as a candidate for triple by-pass surgery.

Dr. Alfred Kahn, Jr., with the same logical reasoning given in numerous other heart cases before this court, diagnosed Mr. Herndon's condition as progressive arteriosclerotic heart disease totally unrelated to his occupation that progressed to myocardial infarction. He did not relate Herndon's activity at work to his heart attack in as much as his exertion was not an unusual one for someone doing the type of work Herndon was required to do in the construction industry. He stated that Mr. Herndon should be limited to light work — not lifting more than five pounds. Dr. Kahn also stated that Mr. Herndon was a good candidate for triple by-pass heart surgery.

Dr. Robert O. Morrow, Dean of the College of Education at the University of Central Arkansas and a counseling psychologist, testified that Herndon's employment skills could be used in light work at a number of different employers in the State of Arkansas. Dr. Morrow described light work as that which included lifting objects up to twenty pounds.

Hayden Herndon testified as to his inability to walk any distance and how his feet swelled when he stood for any length of time.

Based upon the foregoing, the Administrative Law Judge, Gary Shelton, ruled that Herndon's heart attack arose out of and in the course of his employment and that he was permanently and totally disabled within the rationale of *Glass*

v. *Edens*, 233 Ark. 786, 346 S.W. 2d 685 (1961). While the appellants were orally arguing the merits of their case before the Commission, they learned that Mr. Herndon had undergone a triple by-pass heart operation in Houston, Texas. Pursuant to the orders of the Commission, the parties thereafter took the deposition of Dr. Robert D. Leachman who testified that he and Dr. Denton Cooley performed triple by-pass surgery on Hayden Herndon and that at the time Herndon left the hospital he was walking and moving about satisfactorily. While Dr. Leachman could not say what Herndon's recovery would be since he had not seen him since he left the hospital in Houston, he stated that in general about eighty per cent of his patients following such operations wrre rehabilitated and symptom free. In other words the surgery would not impose any physical restrictions on Mr. Herndon unless there was some evidence to the contrary. He stated that a triple by-pass would not disqualify him from working in physical manual labor assuming he was physically able to do it.

Subsequent to the filing of Dr. Leachman's deposition, the Commission, without discussing Dr. Leachman's deposition, affirmed the action of the Administrative Law Judge.

We pointed out in *Barksdale Lumber Co. v. McAnally*, 262 Ark. 379, 557 S.W. 2d 868 (1977), that we are not at liberty to weigh the credibility of witnesses and that where doctors take conflicting views on the issue of whether a person's work caused or aggravated a heart attack then the issue of credibility is one for the Commission (the fact finders). On review we are limited to the single issue of whether there is substantial evidence in the record to support the Commission's findings of fact. Therefore, on the single finding that Hayden Herndon's use of the jackhammer aggravated his predisposition to having a heart attack, we cannot say that such finding is not supported by substantial evidence — *i.e.* the testimony of Dr. Cullen.

However, on the issue of whether Hayden Herndon was permanently and totally disabled, he had the burden of proof, *Taylor v. Plastics Research & Dev. Corp.*, 245 Ark. 638, 433 S.W. 2d 830 (1968), and in view of Dr. Leachman's testimony one

can only speculate whether Hayden Herndon is totally and permanently disabled following his triple by-pass heart surgery. Since the Commission's finding that Mr. Herndon is totally and permanently disabled for compensation purposes can only be sustained by assuming that his condition following the triple by-pass heart operation is the same as before the operation, it follows that we cannot find any substantial evidence to support the Commission's finding of total and permanent disability. We have consistently held that conjecture and speculation, however plausible, cannot be permitted to supply the place of proof. *Sadler, Trustee* v. *Scott*, 203 Ark. 648, 158 S.W. 2d 40 (1942).

In view of the foregoing error, it follows that this case must be reversed and remanded to the Commission for further development of the present condition of Hayden Herndon.

Reversed in part and remanded.

We agree: HARRIS, C.J., and GEORGE ROSE SMITH and PURTLE, JJ.