Johnnie LAMBERT *v.* BALDOR ELECTRIC

CA 93-76                                    868 S.W.2d 513

Court of Appeals of Arkansas
Division I
Opinion delivered December 15, 1993

118

*Walker Law Firm*, by: *Eddie H. Walker, Jr.* and *William J. Kropp, III*, for appellant.

*Shaw, Ledbetter, Hornberger, Cogbill & Arnold*, by: *James A. Arnold II*, for appellee.

JOHN B. ROBBINS, Judge. Appellant Johnnie Lambert was awarded permanent and total disability benefits against appellees Baldor Electric Company and the Second Injury Fund by the Workers' Compensation Commission on October 23, 1992. Ruling that appellees did not controvert Mr. Lambert's entitlement to permanent and total disability benefits, the Commission denied appellant's request for attorney's fees from Baldor Electric Company and the Second Injury Fund. Mr. Lambert now appeals, arguing that the Commission erred in refusing to award attorney's fees. In addition, appellant contends that it is a violation of due process for the Commission to decide cases involving the Second Injury Trust Fund because the Administrator of the fund is an employee of the Workers' Compensation Commission and because the Commission has a financial stake in the outcome of litigation involving the fund. We find no error and affirm.

The facts of the case are not in dispute. Mr. Lambert had been diagnosed with athetoid cerebral palsy with a severe scoliosis prior to beginning work for Baldor Electric in 1968. In 1981, Mr. Lambert suffered a compensable injury to his right shoulder and neck. He sustained subsequent injuries in 1986, and in 1989 he again experienced medical problems and sought temporary disability benefits and medical expenses. Baldor Electric controverted Mr. Lambert's 1989 claim, but on January 4, 1990, the Administrative Law Judge found that the 1989 claim involved a recurrence of the compensable injury. As a result, Mr. Lambert was awarded temporary disability benefits and attorney's fees.

Mr. Lambert later became unable to work, and on August 8, 1990, he submitted his resignation. On October 10, 1990, he

informed appellees that he was permanently and totally disabled and requested that the Second Injury Fund state its position regarding its responsibility for the permanent disability benefits. On October 19, 1990, Lambert submitted a settlement offer of $60,000 plus attorney's fees. On October 23, 1990, the Second Injury Fund counter-offered to pay $30,000. On October 30, 1990, Lambert stated that the case could be settled for $50,000. On the same day, Lambert requested a hearing. The Second Injury Fund immediately acknowledged permanent and total disability. Accepting the claim as uncontroverted, the Administrative Law Judge awarded permanent and total disability against the Second Injury Fund.

Mr. Lambert's constitutional argument is essentially that it is a violation of due process for the Commission to decide cases involving the Second Injury Trust Fund. He claims that he was denied due process rights guaranteed him by the Arkansas Constitution, Article 2, Section 8, and the United States Constitution, Amendments 5 and 14. Specifically, he asserts that the Commission is not an impartial decision maker in that Ark. Code Ann. § 11-9-301 (1987) gives the Commission authority to administer, disburse, and invest funds within the Second Injury Trust Fund. In addition, he argues that the Commission is prejudiced because Judy Jolley, administrator of the fund, is an employee of the Workers' Compensation Commission.

In support of his argument, Lambert relies on *Tumey* v. *Ohio*, 273 U.S. 510 (1927). In that case, the United States Supreme Court held that a mayor who received a portion of fines levied on convicted persons could not constitutionally preside over their trials. The Court stated that "it certainly violates the Fourteenth Amendment, and deprives a defendant in a criminal case of due process of law, to subject his liberty or property to the judgment of a court the judge of which has a direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case." *Id.* at 523. Appellant also cites *Ward* v. *Village of Monroeville*, 409 U.S. 57 (1972), a case in which the Court held that it is a violation of due process for a mayor to sit as a judge when a major part of the village income is derived from fines, forfeitures, costs, and fees. In that case, the mayor was required to account annually for village finances and the revenue produced by the mayor's court was of such importance that when legisla-

tion threatened its loss, the village retained a management consultant for advice regarding the problem. The court in *Tumey* stated that the test as to whether due process is violated is whether the situation is one "which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the state and the accused." 273 U.S. at 532. Applying this standard, the court in *Ward* ruled that, due to the mayor's interest in maintaining village finances and the high level of revenue from the mayor's court, the "possible temptation" to rule improperly constitutionally prevented the mayor from acting as judge. Appellant also cites *Gibson* v. *Berryhill*, 411 U.S. 564 (1973), a case in which a state board composed solely of optometrists was constitutionally unable to bring a disciplinary action against other optometrists due to the possible pecuniary interest involved in excluding competitors.

Relying on the above authority, Lambert asserts that the Commission is not impartial when ruling on cases that involve possible Second Injury Fund liability. He correctly states that he is constitutionally entitled to the benefit of an impartial decision maker. However, we do not agree that the Commission is not impartial with regard to Second Injury Fund cases.

We look to decisions from courts of sister states because neither we nor our supreme court has had occasion to address this issue. *Ison* v. *Western Vegetable Distrib.*, 59 P.2d 649 (Ariz. 1936), is a case in which a claimant argued that the Arizona Workmens' Compensation Act was unconstitutional. The constitutional attack in that case was similar to the one in the case at bar in that the appellant argued that the Industrial Commission was not impartial when deciding cases involving compensation to be paid out of the state compensation fund. The Arizona Supreme Court rejected appellant's due process argument, stating that the Commissioners had no "direct, personal, substantial, pecuniary interest" in the outcome of claims. *Id.* at 656. The court noted that the state compensation fund was not raised by taxation upon citizens in general, but rather came from employers protected by the fund. This is the case with the Arkansas Second Injury Fund. In addition, the Arizona Supreme Court noted that the Commissioners' salaries are neither increased nor decreased by any conclusion they reach regarding compensation.

This is also true with regard to the Arkansas Workers' Compensation Commission. In short, the court held that the Arizona Industrial Commission was not biased even though it was charged with the care and custody of the state compensation fund.

*Ison* was later cited by the Oklahoma Supreme Court in *Duff* v. *Osage County*, 70 P.2d 80 (Okla. 1937). That case involved a constitutional challenge to the State Industrial Commission's control and management over the State Insurance Fund. Following the reasoning in *Ison*, the court held that even though the Commission controlled the fund, it was not biased against awarding claimants compensation from the fund. The holding in *Ison* was again followed in *Jenners* v. *Industrial Comm'n*, 491 P.2d 31 (Ariz. App. 1972).

In the instant case it is clear that the Arkansas Workers' Compensation Commissioners gain no direct benefit in ruling one way or another in Second Injury Fund cases. Their decisions cannot alter their salary nor confer any other benefit on themselves. *Ward* v. *Village of Monroeville, supra*, stands for the proposition that even when no direct benefit is conferred on a judge, he may be constitutionally disqualified if subjected to a "possible temptation" to rule in a biased manner. However, in the case at bar, not only can Commissioners receive no direct benefit, but there exists no "possible temptation" to rule in an unjust fashion. Mr. Lambert does not argue, nor is it evident, that the Commission or its employees are affected by the balance of the Second Injury Fund. Even if the administrator of the Second Injury Fund was somehow harmed by a depletion of its funds, the Commission would still have no incentive to rule contrary to the law. Therefore, there is no conflict in the Commission's handling of cases involving the Second Injury Fund.

Further evidence of impartiality can be seen in the numerous cases in which the Commission has awarded benefits against the Second Injury Fund, only to be reversed by this court on appeal. In fact, the Commission did not hesitate in awarding permanent and total disability benefits against the Second Injury Fund in the instant case. Except for his attorney's fees, Mr. Lambert received all benefits that he sought from the Fund. It is clear that in practice, the Commission is not partial to the Second Injury Fund.

There is a presumption of constitutionality attendant to every legislative enactment, and all doubts concerning it must be resolved in favor of constitutionality. *Holland* v. *Willis*, 293 Ark. 518, 793 S.W.2d 529 (1987). The party challenging a statute has the burden of proving it unconstitutional. *Id.* In the case at bar Lambert has failed to meet his burden of proving that his constitutional right to due process was violated.

Mr. Lambert's remaining argument is that attorney's fees should have been awarded against the Second Injury Fund or Baldor Electric because the Second Injury Fund controverted his claim by engaging in settlement negotiations. Arkansas Code Annotated § 11-9-715(a)(2)(A) (1987) states that attorney's fees should be awarded against the Second Injury Fund if the claim against it is controverted. It is undisputed that the Second Injury Fund acknowledged permanent and total disability immediately after Mr. Lambert requested a hearing before the Commission. However, he argues that the Second Injury Fund's failure to admit to the claim prior to a request for the hearing amounted to a controversion of the claim. In support, Lambert relies on *Aluminum Co. of America* v. *Henning*, 260 Ark. 699, 543 S.W.2d 480 (1976). In that case, an employer was deemed to have controverted a claim even though the employer stated that it would not controvert the claim after it was actually filed with the Commission. The court made this determination based on the fact that the employer denied that the claimant's injury was work-related or compensable until after a claim was filed. The court based its reasoning on the legitimate social purposes of discouraging oppressive delay, deterring arbitrary denials of claims, and assuring claimants of competent representation.

The instant case is distinguishable from *Henning*. On September 6, 1990, the Second Injury Fund acknowledged by letter that Mr. Lambert appeared to be entitled to permanent and total disability or a reasonable settlement of his claim. Special Funds Administrator Judy Jolley asserted that a settlement might better serve Mr. Lambert's needs due to a possible Social Security offset. It was Lambert's attorney who opened settlement negotiations the following month by requesting $60,000 plus attorney's fees. The Second Injury Fund counter-offered to pay $30,000, and Lambert then stated he would accept $50,000. After Lambert requested a hearing, the Second Injury Fund acknowledged

permanent and total disability. Ms. Jolley testified that the only reason this was not formally acknowledged earlier is because settlement negotiations were still pending.

■ It is clear from the above facts that the Second Injury Fund never intended to dispute the ultimate claim as was done in *Henning*. Mr. Lambert contends that the $30,000 settlement offer was so low that one should infer that the claim of total disability was being controverted. However, he would have settled for $50,000 and some offset questions existed. We agree with the Commission's assertion that such settlement negotiations should be encouraged to avoid needless litigation. When a settlement was not reached, Lambert requested a hearing. The Second Injury Fund immediately acknowledged the claim. We conclude that there is substantial evidence to support the Commission's finding that the Second Injury Fund did not controvert Lambert's claim.

■ Alternatively, Mr. Lambert argues that if the Second Injury Fund is not liable for attorney's fees, then Baldor Electric should be held liable for such fees. Baldor Electric had previously controverted temporary benefits and was ordered to pay attorney's fees. Lambert now contends that because Baldor Electric controverted disability at a prior hearing such controversion should extend to any disability benefits awarded at any subsequent hearing. This argument is without merit because Baldor Electric did not controvert Lambert's claim for permanent benefits. While Baldor Electric disputed a claim for temporary benefits at an earlier hearing, to impose perpetual attorney's fees for any subsequent award of benefits at any later hearing would be contrary to the purposes of the statute that provides for such attorney's fees. At the August 5, 1991 hearing Baldor Electric did not controvert Lambert's claim. Therefore, Baldor Electric is not liable for his attorney's fees for recovering the benefits awarded at that hearing.

For the above reasons, we affirm.

JENNINGS, C.J., and ROGERS, J. agree.