Mary HANSON *v.* AMFUEL and Travelers Insurance Company

CA 95-364                                                925 S.W.2d 166

Court of Appeals of Arkansas
En Banc
Opinion delivered July 3, 1996

*Compton, Prewett, Thomas & Hickey, P.A.,* by: *Floyd M. Thomas, Jr.,* for appellant.

*Phillip P. Cuffman,* for appellees.

WENDELL L. GRIFFEN, Judge. The issue posed by this appeal is whether the decision of the Workers' Compensation Commission denying Mary Hanson's claim for additional medical benefits associated with her March 13, 1989, compensable injury is supported by substantial evidence. Hanson has appealed the Commission's decision and contends that the decision is not supported by substantial evidence. We have reviewed the record and concluded that substantial evidence exists to support the decision. Therefore, we affirm the Commission.

Appellant was working for appellee on or about March 13, 1989, when she spilled methyl ethyl ketone (MEK) on her right leg. She dried the area with a hair dryer pursuant to advice obtained from her supervisor. A blister developed in the area later that day, so appellant consulted Dr. Thomas Pullig, her personal doctor, after work. Dr. Pullig noted in his office chart that appellant had sustained a "chemical dermatitis burn to right anterior leg." The blister resolved within several days, but a small knot later developed in the area and continued growing until March of 1990 when appellant again saw her personal doctor and asked him about the knot. Appellant had been undergoing treatment from the doctor for hyperthyroidism between the time that he first treated the dermatitis burn and March of 1990, but the doctor testified by deposition that he did not recall appellant bringing the knot to his attention until March 5, 1990.

Dr. Pullig referred appellant to Dr. W.J. Giller, an orthopedist, whose initial report dated March 12, 1990, indicated that his impression was that appellant had a mass of the right lower leg of an undetermined etiology. Dr. Giller surgically removed the mass on March 28, 1990, and later recommended that appellant consult Dr. Marshall Cunningham, a plastic surgeon in Shreveport, Louisiana. Dr. Cunningham saw appellant on November 21, 1990, and she told him that the mass developed on her leg after an acid spill.

Appellant's initial medical treatment by Dr. Pullig and Dr. Giller was paid by appellee. However, when appellant sought continued medical treatment for what she contends are the residual effects of the compensable injury, appellee contended that appellant's complaints were unrelated to the compensable injury and, therefore, not compensable. At the hearing of this claim before the administrative law judge, the appellee introduced into evidence a 78-page exhibit that included medical reports from Dr. William Geissel and Dr. Henry Simmons. Neither Dr. Geissel nor Dr. Simmons had treated appellant. However, they had reviewed medical documents related to her dispute with appellee concerning her claim for additional medical treatment.

Appellant now argues that the Commission erred when it affirmed and adopted the decision of the law judge that denied her claim for additional medical benefits. Our task on appeal is to review the evidence and all reasonable inferences that may be deduced from it in the light most favorable to the findings of the Commission. *Mac v. Tyson Foods, Inc.*, 28 Ark. App. 229, 771 S.W.2d 794 (1989). On appeal, the issue is not whether we might have reached a different result from that reached by the Commission, or whether the evidence would have supported a contrary finding. If reasonable minds could reach the Commission's decision, we must affirm. *Bradley v. Alumax*, 50 Ark. App. 13, 899 S.W.2d 850 (1995).

The upshot of appellant's argument is that the Commission denied her claim for additional medical benefits by relying upon the opinions of Dr. Geissel and Dr. Simmons although those doctors had not treated appellant and had only reviewed medical records provided to them by appellee. Appellant argues that the opinions of doctors who have not treated or examined her cannot be substantial evidence to support denial of her claim in the face of opinion evidence by Dr. Pullig, Dr. Cunningham, and Dr. Ernest Hartmann

(another doctor who actually saw her). It is true that Dr. Pullig stated that his speculation was that the growth at the site of the chemical burn might have been caused by the burn, although he also admitted that he did not know if appellant had suffered a chemical burn that would have resulted in some sort of thickening or growth later occurring. Dr. Cunningham, the plastic surgeon, also opined that his common-sense assessment was that a causal connection existed between the chemical burn and the growth of the knot at the same site several months later.

On the other hand, the May 6, 1991, report from Dr. Henry Simmons, an assistant professor of toxicology at the University of Arkansas for Medical Sciences, included the following statement:

> MEK is a simple ketone which is an irritant to the skin, eyes and mucous membranes. It is not an "acid." It is not an exotic compound about which little is known. Its cutaneous effects are attributable to leaching of fat from the skin which produces an effect similar to that occurring on the hands after the short-term use of gasoline to clean oily parts. Brief exposures to MEK do not characteristically cause deep injury to the skin. This is particularly true when contacts take place a single time, occur on previously normal skin, and do not involve occlusion. In any case, there is no evidence in the record that Ms. Hanson ever had severe damage to her skin in the period immediately after the accident.

> Furthermore, I am aware of no literature linking the material to the development of subcutaneous fatty or fibrous tissue such as that contained in Ms. Hanson's surgical specimens.

▇▇ The responsibility of weighing the conflicting medical evidence and opinions and determining the preponderance of the evidence is not for us to fulfill on appellate review. It is the exclusive function of the Commission to determine the credibility of the witnesses and the weight to be given their testimony. *Johnson* v. *Riceland Foods*, 47 Ark. App. 71, 884 S.W.2d 626 (1994). The Commission had the opportunity to consider the disparate opinions from the witnesses concerning whether appellant's growth was caused by her chemical burn, and it decided that appellant had failed to prove by a preponderance of the evidence that the growth was caused by the chemical burn so as to entitle her to additional

medical treatment at appellee's expense. The fact that reasonable minds might have reached a different result does not mean that the result reached by the Commission lacks substantial evidence. We hold that the opinion evidence provided by Dr. Geissel and Dr. Simmons, which rejected a causal relationship between the growth and the chemical burn, constitutes substantial evidence in support of the Commission's decision.

At oral argument, counsel for appellant contended that reversal is mandated because the reports from Dr. Geissel and Dr. Simmons were not verified in compliance with Ark. Code Ann. § 11-9-704(c) (Repl. 1996). Although both counsel were under the impression at oral argument that appellant had objected to the reports from those doctors being received into evidence on that basis, the record clearly indicates otherwise. At page 16 of the record, the following exchange occurred between counsel for appellant and the administrative law judge:

> MR. THOMAS: . . . Your Honor, we object specifi-cally to the reports of Doctor William Geissel and Doctor Harry (sic) Simmons, who simply reviewed documents, medical documents; that we are really not sure exactly what they reviewed. They have never seen Ms. Hanson; never reviewed her case; they simply reviewed certain matters and discussed matters with a rehabilitation nurse, and we don't feel that their reports are entitled to any weight or credibil-ity, and really involve pure speculation and conjecture on their part as to what may be involved in this leg, since they have never seen this lady, and I think their letters are basi-cally in terms of speculation and conjecture, and we don't feel that they are properly admissible in this case, Your Honor.

> JUDGE SMITH: Your objection will be taken under advisement, Mr. Thomas. I'll have to look at the reports before I can make a ruling on it.

> MR. THOMAS: I understand, Your Honor.

No objection was made before the Commission to the admissibility of the reports from Dr. Geissel and Dr. Simmons because they were unverified. Indeed, the record does not indicate that their authenticity was challenged at all. The objection raised by appellant's counsel was directed to their probative weight, not their

authenticity. As previously mentioned, it is the exclusive function of the Commission to weigh the evidence. Beyond that, issues may not be raised on appeal that have not first been raised and decided below. *Hyde* v. *C.M. Vending Co., Inc.*, 288 Ark. 218, 703 S.W.2d 862 (1986). Therefore, our decision is not based on appellant's new and unpreserved position at oral argument concerning the unverified reports.

Affirmed.

JENNINGS, C.J., and PITTMAN, ROGERS, AND NEAL, JJ., agree.

MAYFIELD, J., dissents.

MELVIN MAYFIELD, Judge, dissenting. I dissent from the majority opinion which affirms the decision of the Commission in this case.

The appellant contends that the methyl ketone (MEK) she spilled on her leg while at work caused a growth which eventually had to be surgically removed. Her doctors could not be sure, but they gave their common-sense opinion that this was the cause of the growth. The evidence on the other side simply relied upon the fact that "the literature" did not suggest that there would be a causal relationship.

This situation has been summarized by Larson as follows:

> [I]f the circumstances themselves are persuasive enough, a conclusion supported by no medical testimony may stand in defiance of medical testimony to the contrary.

2B Larson, *The Law of Workmen's Compensation* § 79.52(a) (1995). A case cited by Larson in support of the above statement is *Riley* v. *Monark Boat Co.*, 269 Ark. 819, 602 S.W.2d 411 (Ark. App. 1980), where the court said: "We are not required to accept medical opinion categorically where there is strong and compelling evidence to the contrary." 269 Ark. at 826, 602 S.W.2d at 415.

Here, I do not think reasonable persons with the same evidence before them would find against the appellant. I believe that reasonable people would agree with the doctors who saw and treated the appellant rather than with the doctors and the professor who never saw her.

Therefore, I dissent.