Lee Wayne JETER *v.* B.R. McGINTY MECHANICAL

CA 97-700 968 S.W.2d 645

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered May 5, 1998

*Slagle & Gist*, by: *Richard L. Slagle*, for appellant.

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *Jim Tilley* and *Julia L. Busfield*, for appellee.

JOHN E. JENNINGS, Judge. This is a workers' compensation case. Appellant, Lee Wayne Jeter, appeals from an order of the Commission, which found that he failed to prove by a preponderance of the evidence that medical problems requiring surgery in July 1994 were a compensable consequence of his June 1991 compensable injury. He argues that the Commission's finding is not supported by substantial evidence. Appellee, B.R. McGinty Mechanical, cross-appeals from the Commission's order, arguing that the award of attorney's fees is not supported by substantial evidence. We disagree, and affirm on both the appeal and the cross-appeal.

Appellant suffered a compensable injury while employed by appellee as a welder when he experienced a myocardial infarction at work on June 12, 1991. At that time Dr. Bruce Murphy, appellant's cardiologist, performed an angioplasty of a tight blockage in appellant's right coronary artery. Appellant subsequently developed another blockage in the right coronary artery which required another surgery in July 1994. He sought workers' compensation benefits for the 1994 blockage and surgery, arguing that they were causally related to the compensable 1991 injury.

On appeal in workers' compensation cases, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and will affirm if those findings are supported by substantial evidence. *Morelock v. Kearney Co.*, 48 Ark. App. 227, 894 S.W.2d 603 (1995). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *College Club Dairy v. Carr*, 25 Ark. App. 215, 756 S.W.2d 128 (1988). The

issue on appeal is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Bearden Lumber Co. v. Bond*, 7 Ark. App. 65, 644 S.W.2d 321 (1983). Where a claim is denied, the substantial evidence standard of review requires us to affirm the Commission if its opinion displays a substantial basis for the denial of the relief sought. *Linthicum v. Mar-Bax Shirt Co.*, 23 Ark. App. 26, 741 S.W.2d 275 (1987).

We also recognize that it is the function of the Commission to determine the credibility of the witnesses and the weight given to their testimony. *Whaley v. Hardee's*, 51 Ark. App. 166, 912 S.W.2d 14 (1995). In addition, the Commission has the duty of weighing medical evidence and, if the evidence is conflicting, its resolution is a question of fact for the Commission. The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Whaley, supra.*

At the hearing appellant testified that he has remained under Dr. Murphy's care since his 1991 heart attack and surgical procedure. His attempt to return to work after his heart attack was unsuccessful. He has remained on prescription medicines for his heart, has lost weight and quit smoking, and plays golf about once a week. After a check-up disclosed the subsequent blockage he underwent the second procedure in July 1994.

Medical evidence consisted of a letter from Dr. Murphy, appellant's treating cardiologist, which stated:

> Wayne Jeter is a patient of mine who I have been taking care of since 1991. He had a myocardial infarction in June 1991 and subsequently had the artery opened, June 1991, with angioplasty of a tight blockage in his right coronary artery. In July 1994, repeat coronary angiograms demonstrated that the exact blockage was back at the exact same location in his right coronary artery. This was effectively treated with a directional coronary atherectomy with removal of a large fractured plaque in the coronary at the site that the original infarct had occurred. The question arose as to whether or not this was a work related problem. His

original infarct occurred while at work. My only certain response is that the exact same blockage is back in the exact same location and therefore, the ongoing treatment is for the same problem at a later time. I am afraid I can't be more specific than that. It is very clear from his coronary angiograms that a new blockage had not developed, but the old blockage had recurred at the exact same site. I hope that this is helpful in your work in this matter.

Also in evidence is a letter from Dr. Eugene M. Jones, which stated:

I reviewed the records on Mr. Wayne Jeter with reference to his myocardial infarction that occurred in June, 1991 and his subsequent angioplasty. In addition to this, in July, 1994, he had repeat angiogram which showed coronary artery obstruction in approximately the same location of the right coronary artery. The patient does have other coronary artery disease as evidenced by mild obstructions in both the left anterior descending and circumflex systems.

I am well aware that there are many Workman Comp claims for myocardial infarctions where the patient experienced a myocardial infarction while doing his usual routines. Commonly, this is classified as related to that work routine, however, as we also well recognize atherosclerosis of the coronaries is a process of continual change within the coronary arteries. The process involves break down of the wall of coronary arteries due to rather high sheer forces due to the amount of blood being transmitted to the myocardium. The break down in that wall is associated first on a genetic basis; that is, it is transmitted somewhat by heredity but is influenced by other factors such as cholesterol, smoking and regular exercise program.

In this particular case, there appears to be a focus on the aspect that the recurrent lesion in the right coronary artery in 1994 was in the exact location that it was in 1991. This may indeed be more reflective of the sheer forces that are present in that coronary artery producing the lesion in the same site as previously had occurred. Since the patient had apparently had reasonable relief of symptoms for prolonged period, one would suggest that this may well be a progression of the disease process; that is atherosclerosis that has been documented as well in his other arteries.

In review of this material, there appears to be some reference to the fact that the patient had reonset of his symptoms and in fact in March, 1992 on a treadmill he had some chest tightness in the recovery period and had some mild electrocardiographic changes but no echocardiographic evidence of alterations of wall motion. This then would make one consider that the patient did not have complete resolution of his right coronary artery lesion with the angioplasty done in 1991. Certainly this is all conjecture.

I hope I have outlined the various possibilities and that my opinion really is that atherosclerosis of the coronary arteries is not significantly related to a patient's occupation but is more related to genetic factors and lifestyle conditions such as smoking, high cholesterol and hypertension.

When the primary injury is shown to have arisen out of and in the course of the employment, the employer is responsible for any natural consequence that flows from that injury. *McDonald Equip. Co. v. Turner*, 26 Ark. App. 264, 766 S.W.2d 936 (1989). The basic test is whether there is a causal connection between the two episodes. *See Bearden Lumber Co. v. Bond*, 7 Ark. App. 65, 644 S.W.2d 321 (1983).

The Commission's opinion quotes the letter from Dr. Murphy, and then states:

> With regard to Dr. Murphy's letter, we note that Dr. Murphy has *not* suggested that either the prior myocardial infarction itself, or the nature of the 1991 blockage treatment, increased the likelihood of the formation of a "recurrent" blockage at the site of the 1991 blockage. As we interpret Dr. Murphy's statements, Dr. Murphy's only basis for a possible causal connection between the claimant's 1994 coronary blockage and the claimant's 1991 coronary blockage is the mere coincidence that each blockage occurred at the same location. However, relying on Dr. Murphy's observation to find that the claimant's 1994 coronary blockage was related to the 1991 infarction (or the 1991 blockage treatment) would require us to engage in speculation and conjecture, and speculation and conjecture can never be substituted for credible evidence, no matter how plausible. *Dena Construction Co. v. Herndon*, 264 Ark. 791, 575 S.W.2d 151 (1980).
>
> Moreover, the greater weight of the evidence indicates that the coronary blockage identified in 1994, was causally related to

other factors and was *not* related to either the prior infarction or the prior blockage treatment. In this regard, Dr. Eugene Jones, also a cardiologist, indicated in a November 28, 1995, letter to the respondents' attorneys that he reviewed the claimant's 1991 and 1994 medical records (which were not submitted into evidence). According to Dr. Jones, atherosclerosis is a process of continued change within the coronary arteries which involves a break down of the walls of the coronary arteries due to rather high sheer forces created by the amount of blood being transmitted to the myocardia. Dr. Jones indicated that coronary artery break down is associated first with genetic factors, but other factors including cholesterol, smoking, and regular exercise may influence the process. Dr. Jones also indicated that recurrence of a lesion at the same location in the claimant's right coronary artery may merely reflect the sheer forces created by blood flow in the artery. In addition, Dr. Jones indicated that atherosclerosis is present in other arteries as well as the right coronary artery and that the claimant can be experiencing a natural progression of that disease process. Moreover, Dr. Jones opined that atherosclerosis, the underlying disease process, is more related to genetic factors and lifestyle conditions (smoking, high cholesterol and hypertension) and is not significantly related to a person's occupation.

Although Dr. Murphy did not address genetic factors or lifestyle conditions in his assessment of the probable etiology of the claimant's 1994 coronary blockage, we note that the claimant testified that Dr. Murphy placed him on a strict walking program and a low cholesterol diet, and advised the claimant to lose weight and quit smoking after identifying the 1994 blockage.

Therefore, after reviewing the opinions of Dr. Murphy and Dr. Jones, and all other evidence in the record, and for the reasons discussed herein, we find that the claimant failed to prove by a preponderance of the evidence that his 1994 coronary blockage is causally related to the compensable injury he sustained in 1991.

■ ■ The determination of whether the causal connection exists is a question of fact for the Commission to determine. *Carter v. Flintrol, Inc.*, 19 Ark. App. 317, 720 S.W.2d 337 (1986). The Commission interpreted appellant's only medical evidence, Dr. Murphy's letter, as stating that the only basis for a possible causal connection between the appellant's 1994 coronary blockage and his 1991 coronary blockage is the "mere coincidence that

each blockage occurred at the same location." Mere coincidence is not to be equated with causation. *Lybrand v. Ark. Oak Flooring Co.*, 266 Ark. 946, 588 S.W.2d 449 (1979). The Commission obviously considered the opinion of Dr. Jones, which indicated that appellant's atherosclerosis was related to genetic and lifestyle factors, and which described the possible connection to his prior blockage as "conjecture." It is the duty of the Commission to translate the evidence on all issues before it into findings of fact. The specialization and experience of the Commission make it better equipped than this court to analyze and translate evidence into findings of fact. *Weldon v. Pierce Bros. Constr.*, 54 Ark. App. 344, 925 S.W.2d 179 (1996). The Commission has the duty of weighing the medical evidence as it does any other evidence, and its resolution of the medical evidence has the force and effect of a jury verdict. *Chamber Door Indus., Inc. v. Graham*, 59 Ark. App. 224, 956 S.W.2d 196 (1997). The question is not whether the evidence would have supported findings contrary to the ones made by the Commission; there may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we sat as the trier of fact or heard the case de novo. *Stephens Truck Lines v. Millican*, 58 Ark. App. 275, 950 S.W.2d 472 (1997).

 Because the Commission's opinion displays a substantial basis for the denial of the relief sought, we must affirm.

The Commission's opinion also awarded appellant's attorney a fee of ten percent of appellant's compensation for a seventy-five percent permanent partial anatomical impairment. Appellee cross-appeals, arguing that there is no substantial evidence to show that the issue of permanent partial disability was controverted.

The Commission's opinion notes that appellee initially controverted compensability on appellant's June 1991 injury in its entirety. However, at the start of the hearing on September 23, 1992, appellee proposed stipulations concerning compensability, lump sum temporary total disability benefits, and the commencement of permanent partial disability benefits. Appellee's counsel stated that the claim had been controverted in its entirety, and appellee would pay appellant's counsel "in lump sum attorney's

fees on those benefits which have accrued to date, and then pay him accordingly in some fashion for benefits in the future prior to either a joint petition settlement or further determination by the Commission regarding disability." The agreed order, entered on October 26, 1992, reflects that appellee would begin to pay permanent partial disability on an anticipated anatomical ruling from Dr. Murphy and states that appellant's attorney "is to be paid a maximum attorney's fee on all controverted benefits." Reading the order in light of the stipulations, the Commission stated:

> [W]e understand the administrative law judge's September 23, 1992 order to require [appellee] to pay an attorney's fee on [appellant's] permanent partial disability compensation as well as on [appellant's] reasonably necessary medical expenses and his temporary total disability compensation. Consequently, we find that the issue of the [appellee's] obligation for an attorney's fee on the claimant's 75% permanent partial impairment rating is now *res judicata*.

The Commission further stated that, even if the issue of attorney's fees for appellant's permanent partial disability was not res judicata, it would still find that appellee had controverted appellant's entitlement to permanent partial disability.

Appellee argues that it is undisputed that the issue of permanent partial disability was reserved, as shown in the prehearing order, and that appellee agreed to pay whatever rating was assigned and has done so. The Commission, however, found that the record of the hearing and the ALJ's order from 1992 clearly establish that the parties did in fact raise and develop the permanent partial disability issue at the hearing. Furthermore, the Commission found that the evidence indicates that appellee initially denied liability for any benefits until the September 23, 1992, hearing, but then stipulated that appellant was in fact entitled to compensation for a permanent anatomical impairment rating retroactive to September or October of 1991.

Whether or not a claim is controverted is a question of fact for the Commission, and its finding on this issue will not be reversed unless there is no substantial evidence to support it. *Aluminum Co. of America v. Henning*, 260 Ark. 699, 543 S.W.2d 480 (1976). Because we cannot say that reasonable minds could not

reach the Commission's conclusion regarding controversion and attorney's fees, we affirm.

Affirmed.

PITTMAN and AREY, JJ., agree.

CRABTREE, MEADS, and ROAF, JJ., dissent.

TERRY CRABTREE, Judge, dissenting. I do not believe the Commission's decision is supported by substantial evidence and would reverse.

The facts in this case are characterized by both parties as relating to a subsequent injury or disability, or a recurrence, and their arguments revolve around those concepts. However, it is more appropriate to assess the dispute in terms of whether the second procedure was reasonably necessary medical treatment for Jeter's admittedly compensable 1992 heart attack. The appellant's treating physician, Dr. Murphy, opined that:

> . . . the exact blockage was back at the exact same location in his right coronary artery. It is very clear from his coronary angiograms that a new blockage had not developed but the old blockage had recurred at the exact same site.

However, B.R. McGinty arranged for Jeter's records to be reviewed by another cardiologist, Dr. Jones. Dr. Jones states, in generalities, the causes of heart disease, and then, without ever seeing or treating Jeter, opined that the need for further treatment was caused by genetics or high cholesterol.

Admittedly, the Commission has wide latitude in weighing the medical evidence; however, when a case turns on such evidence, its decision must still be supported by substantial evidence. In this case, the Commission reviewed a cold record giving no weight to the assessment of the determination of credibility made by the ALJ in its *de novo* review of the record. This procedure begs the question of why there is a hearing at all if there is no deference whatsoever given to the tribunal that actually sees and hears the witnesses. It would be more economical to forego a hearing and send the case to the appellate courts without a hearing and solely by depositions. Of course, the abbreviated procedure may fly in

the face of procedural and substantive due process, but it is analogous to the situation that currently exists where the Commission, without assessing the personal attributes of the witnesses testifying, reverses a decision of the ALJ on credibility. This case is particularly notable because the Commission evidently accepted the testimony of a physician hired to review Jeter's medical records who testified to heart disease in general, whereas Dr. Murphy actually treated the appellant and was aware of the unique circumstances of his case.

The Commission cites *Dena Const. Co. v. Herndon,* 264 Ark. 791, 575 S.W.2d 151 (1979), for the proposition that a decision cannot rest on speculation and conjecture. The *Dena* case has been cited many times for this proposition, but the holding in *Dena* was that of an appellate court and not the Commission. The Commission is to weigh the evidence presented to it and give whatever weight it considers appropriate to the testimony of the witness. *Hanson v. Amfuel,* 54 Ark. App. 370, 925 S.W.2d 166 (1996). They need not set aside their common sense in making their decision. The Commission may make reasonable inferences from the testimony received and base its decision on both the direct evidence and the inferences that may be drawn from that testimony. To reject the testimony of the treating physician in this case, and accept that of a doctor who never saw the patient and testified in generalities, is to shirk the obligation to make a decision based upon reasonable inferences from the evidence. Such a well-settled procedure cannot be characterized as relying on speculation and conjecture.

In this case, there is more than enough evidence in the record to indicate that the medical services provided to the appellant were a result of the initial injury. Dr. Murphy was clear in stating that the blockage was in the exact same place as the previous blockage. The reasonable inference to be drawn from this fact is that the blockage was site-specific as a result of the initial injury. Any other conclusion would in fact result in speculation and conjecture on the part of the Commission.

With due respect to my fellow judges, I dissent.

MEADS, J., joins in this dissent.

ANDREE LAYTON ROAF, Judge, dissenting. I agree with the majority on the affirmance of the direct appeal brought by Jeter. However, I do not agree that the cross-appeal should also be affirmed, and I would reverse.

B.R. McGinty argues on cross-appeal that there is no substantial evidence to support the Commission's finding that it controverted the award of Jeter's permanent partial disability (PPD). It contends that the Commission disregarded controlling authority in *Lambert v. Baldor Elec.*, 44 Ark. App. 117, 868 S.W.2d 513 (1993), and points to the prehearing order filed August 27, 1992, which states in pertinent part:

> Claimant contends in summary that he sustained a compensable heart attack on June 12, 1991; that he is entitled to temporary total disability benefits from June 12, 1991, and continuing through an undetermined date based upon the medical evidence; payment of all medical and related expenses; and controverted attorney's fee on any benefits awarded. *Claimant specifically reserved the issues of vocational rehabilitation and permanent disability.*

(Emphasis added.)

B.R. McGinty contends that the issue of permanent disability was specifically reserved and that it willingly began paying PPD even before a rating had been assigned and the amount established. Further, citing *Aluminum Co. of Amer. v. Henning*, 260 Ark. 699, 543 S.W.2d 480 (1976), B.R. McGinty contends that the purpose of the attorney fees statute is to discourage respondents from delaying accepting liability for the claim and to deter arbitrary denial of claims, and because it promptly paid the PPD benefits, it should not be penalized. I fully agree with both contentions.

In the August 27, 1992, prehearing order, the issue of permanent impairment was specifically excepted from the scheduled September 23, 1992, hearing. Although the Commission is essentially correct in stating that the "parties did in fact raise and develop the permanent anatomical impairment issue at the September 23, 1992, hearing," this statement is misleading. B.R. McGinty raised this issue only to totally capitulate. The administrative law judge (ALJ) noted on the record B.R. McGinty's decision to pay PPD even though Jeter had not yet been medically

maximized, and stated, "of course, as you all were both aware, the primary issue was one of compensability, and permanent disability, as well as rehabilitation, was specifically reserved even by the terms of the prehearing order filed August the 27th." Accordingly, it was clear that B.R. McGinty could have controverted the amount of PPD, but chose not to. While *res judicata* prevented it from subsequently controverting the amount of PPD benefits, it has nothing to do with deeming a reserved issue controverted.

Moreover, B.R. McGinty justifiably relies upon *Lambert v. Baldor Elec., supra.* In *Lambert,* the employer had fully controverted a claim. However, after the ALJ ruled that the injury was compensable and awarded temporary disability benefits and attorney's fees, the employer settled a later claim for total permanent disability benefits on the day Lambert requested a hearing on the issue. This court rejected Lambert's argument that, because the employer had controverted disability at a prior hearing, such controversion should extend to any disability benefits awarded at any subsequent hearing, stating, "this argument is without merit because Baldor Electric did not controvert Lambert's claim for permanent benefits." This is precisely the scenario presented in the instant case, however, the Commission and this court inexplicably have chosen to penalize B.J. McGinty, who agreed to pay permanent benefits at an even earlier stage than did the employer in *Lambert.*

Although it is true that the question of controversion is one of fact to be determined by the Commission and must be affirmed if supported by substantial evidence, *Aluminum Co. of Amer. v. Henning, supra,* I conclude that there is no evidence of controversion of the reserved issue of PPD. Accordingly, I would reverse the Commission's award of attorney fees based on the PPD award.

CRABTREE, J., joins.