SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–15–4

| | | |
|---|---|---|
| | | **Opinion Delivered** MAY 20, 2015 |
| SHERWIN THOMAS | | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G305721] |
| | APPELLANT | |
| V. | | |
| SUPERIOR INDUSTRIES | | |
| | APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Sherwin Thomas was working for appellee Superior Industries on June 11, 2013, when he sustained an admittedly compensable injury when a fifty-pound car rim fell on his left foot. Superior Industries paid medical benefits associated with the accident.

A month later, on July 11, 2013, Mr. Thomas was diagnosed with bilateral peripheral artery disease (PAD). Thereafter, Mr. Thomas filed a claim for additional medical treatment, alleging that treatment for his PAD in his left foot was causally related to the compensable injury. In particular, Mr. Thomas claimed that the work accident aggravated a preexisting condition.[1] Superior Industries controverted the additional medical benefits.

After a hearing, the Workers' Compensation Commission denied Mr. Thomas's claim for additional medical treatment, finding that Mr. Thomas failed to prove a causal connection

---

[1]Mr. Thomas claimed in the alternative that the compensable accident caused his PAD, but he no longer argues that on appeal.

between the compensable injury and his PAD. Mr. Thomas now appeals, arguing that the Commission's decision is not supported by substantial evidence. We affirm.

The law requires an employer to provide medical services that are reasonably necessary in connection with the compensable injury received by an employee. Ark. Code Ann. § 11–9–508(a) (Repl. 2012). We have held that an employer takes an employee as it finds him, and that employment circumstances that aggravate preexisting conditions are compensable. *Leach v. Cooper Tire and Rubber Co.*, 2011 Ark. App. 571. In *Pulaski County Special School District v. Tenner*, 2013 Ark. App. 569, we stated that a preexisting medical condition does not defeat a claim if the compensable injury aggravated, accelerated, or combined with the preexisting condition to produce the disability for which workers' compensation benefits are sought. When the primary injury arises out of and in the course of employment, the employer is responsible for any natural consequence that flows from that injury. *Jeter v. B.R. McGinty Mech.*, 62 Ark. App. 53, 968 S.W.2d 645 (1998). The basic test is whether a causal connection exists between the two episodes. *Id.*

The claimant has the burden of proving the compensability of his claim by a preponderance of the evidence. *Williams v. Baldor Elec. Co.*, 2014 Ark. App. 62. On appeal, we review the evidence in the light most favorable to the Commission's findings and affirm if those findings are supported by substantial evidence. *Wal-Mart Stores, Inc. v. Brown*, 82 Ark. App. 600, 120 S.W.3d 153 (2003). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The Commission has the duty to make credibility determinations, to weigh the evidence, and to resolve conflicts in the

medical testimony. *Martin Charcoal, Inc. v. Britt*, 102 Ark. App. 252, 284 S.W.3d 91 (2008). When the Commission denies benefits because the claimant failed to meet his burden of proof, the substantial-evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for the denial of relief. *Frances v. Gaylord Container Corp.*, 341 Ark. 527, 20 S.W.3d 280 (2000).

Mr. Thomas began working for Superior Industries in February 2013, and his duties included stacking car rims on pallets and hanging the rims on a line to be polished. On June 11, 2013, Mr. Thomas was at work when one of the rims fell about a foot and half off the line and struck the top of his left foot. Mr. Thomas testified that he was in immediate pain. He went outside, removed his boot and sock, and rubbed his foot to try to relieve the pain. It was about one hundred degrees that day and, after Mr. Thomas put his sock and boot back on and walked around for a few seconds, he became lightheaded and fainted. His coworkers called an ambulance, and Mr. Thomas was taken to the emergency room.

Mr. Thomas stated that while at the emergency room he was in pain and his entire left leg was numb. A left-foot exam revealed no deformity, no ecchymosis, and no swelling. An x-ray was taken of his left foot, which showed no fracture or dislocation. In addition, Mr. Thomas was given IV fluids because he was dehydrated.

The emergency-room report documented that the chief complaint was syncope, and also that the patient stated he had experienced a minor trauma. The primary diagnosis was heat exhaustion, with an additional diagnosis of a foot sprain.

Mr. Thomas was off work for a few days, and then he returned to light duty for two weeks. According to Mr. Thomas, he was told to return to regular duty after that, but because he was unable to return to regular duty he quit reporting for work and was ultimately terminated.

Mr. Thomas visited his primary-care physician, Dr. Mark Bonner, one month after the injury on July 11, 2013. Dr. Bonner documented left-foot pain with numbness and swelling. Dr. Bonner diagnosed PAD and ordered further testing of both lower extremities. An arterial-doppler test detected an abnormal right-ankle brachial index of 0.5, which suggested moderate arterial-vascular obstruction. The doppler test showed no detectable pulses in the left lower extremity, and detected only PVR wave forms. A CT angiogram resulted in the following impression:

> In the left lower extremity, there is complete occlusion of the left external iliac artery down to the level just proximal to the inguinal canal where it is reconstituted. Then, there is complete occlusion of the left superficial femoral artery from its origin down to the adductor hiatus where it is reconstituted. Next, there is complete occlusion of the popliteal artery. Finally, there is reconstitution of the posterior and anterior tibialis arteries and the peroneal arteries with normal runoff to the foot.
> The right lower extremity contains complete occlusion of the right superficial femoral artery from its origin down to the adductor hiatus where it is reconstituted via collateral flow. The right tibialis anterior artery contains a long segment of stenosis just distal to its origin and multifocal areas of complete stenosis throughout its course. There is concern for near-complete occlusion of portions of the bilateral internal iliac arteries.

The arterial-doppler testing and CT angiogram confirmed appellant's vascular issues.

At the request of Superior Industries, Mr. Thomas was evaluated by Dr. Konstantin Berestnev on July 16, 2013. In a physician's report dated July 25, 2013, Dr. Berestnev

gave a diagnosis of foot contusion, syncope and collapse, and psychosocial circumstances. Dr. Berestnev also noted, "PAD—not work-related."

In his testimony, Mr. Thomas stated that ever since the rim had fallen on his left foot his symptoms have remained the same. He stated that he experiences numbness and throbbing pain in his left leg and foot that keeps him awake at night. Mr. Thomas further stated that his left foot is discolored, and that when he tries to sleep he experiences shaking in both his left and right legs and feet. Although Mr. Thomas had experienced minor swelling and redness in his feet prior to the work-related accident, which was documented in earlier medical reports, he maintained that his symptoms have become much worse since the rim fell on his foot.

In this appeal, Mr. Thomas argues that substantial evidence does not support the Commission's decision denying him additional medical treatment for his PAD. He contends that his work injury aggravated his preexisting PAD, causing it to become symptomatic and resulting in the need for treatment. Although Mr. Thomas had experienced minor swelling prior to the accident, he asserts that his left-leg symptoms became severe after the rim fell on his foot, resulting in medical testing that confirmed the existence of PAD. Mr. Thomas contends that the only reasonable conclusion is that the exacerbation of his PAD was a natural consequence of the work injury, and therefore that the associated treatment is for a compensable condition that is the responsibility of the employer.

We hold that the Commission's opinion displays a substantial basis for its denial of appellant's claim for additional medical benefits associated with his PAD. After the

compensable event on June 11, 2013, Mr. Thomas was taken to the emergency room after fainting due to heat exhaustion, where he reported a "minor trauma" to his left foot. The emergency-room exam and x-rays showed no deformity, no ecchymosis, no swelling, no fracture, and no dislocation. One month later, when Dr. Bonner diagnosed PAD, he did not relate this diagnosis to the work-related accident. The claimant's vascular problems were bilateral and were detected in both legs commencing at or just below the hips, continuing through the thighs all the way to the feet. Shortly thereafter, Dr. Berestnev reported that the PAD was not work related. The record is devoid of any medical evidence that the claimant's PAD was work related. It was for the Commission to weigh the evidence and medical opinions, and on this record reasonable minds could conclude that the work injury was not causally related to appellant's subsequent vascular diagnosis.

Affirmed.

GLADWIN, C.J., and VIRDEN, J., agree.

*Tolley & Brooks, P.A.*, by: *Evelyn E. Brooks*, for appellant.

*Bassett Law Firm LLP*, by: *Curtis L. Nebben*, for appellee.