Gary W. TACKETT *v.* Bob HESS, et al.

86-156                                          723 S.W.2d 833

Supreme Court of Arkansas
Opinion delivered February 16, 1987

*James F. Lane,* for appellant.

*Mark Stodola,* City Att'y, by: *Stephen R. Giles,* for appellee.

DAVID NEWBERN, Justice. In this zoning case we are required to construe Little Rock city ordinances. The appellant, who was the plaintiff, complained that property in his neighborhood was improperly allowed planned unit development (PUD) status. He contends that the lot in question is too small for consideration as a PUD, and that if we agree we must find the action by the appellees in granting the PUD status is void because it constitutes an illegal exaction prohibited by Ark. Const. art. 16, § 13. As we find no illegality or violation of the controlling ordinances, we affirm and need not discuss the illegal exaction point.

The evidence before the chancellor showed that the lot in question is zoned R-3 and is owned by a Mr. Flynn. Apparently there was a triplex apartment complex on the lot which would not have been allowed in an R-3 zone, but which had been there as a pre-existing use. Although the record does not show why it was necessary, we know Mr. Flynn sought PUD status for his property. His purpose was to maintain his triplex, and we suppose he was improving the property in some manner requiring a building permit. Again, the record does not show what it was, but reference is made to Mr. Flynn's "project." The appellant opposed a PUD for the property, and he brought this suit after the PUD was approved by the appellees.

Article IX of the Little Rock Comprehensive Zoning Ordi-

nance states, in § 9-101 A., the general purpose of a planned unit development. It says the idea is to combine in one process review of proposed subdivision and zoning of land with more or less flexible guidelines to permit optimum combinations of dwelling density, other facilities, and open space in the unit proposed.

In its original form § 9-101 C. 3. provided:

3. Minimum Size

Eligible properties must normally be 2.0 acres or larger in size (gross acreage). Slightly smaller parcels may be eligible, provided the applicant can show that the proposed planned unit development can meet the intent and regulations of this article without injury to the public health, safety, and welfare.

In 1983, the city board passed Ordinance No. 14,395 which provided for a "short form planned unit development process." Section 9-101 A. was amended by the addition of the following language:

Applicants for small-scale development are offered further inducements to use the planned unit development process by reducing the time and cost factors. This process is described further in this article as "short form P.U.D." The process is deemed necessary to assure control of certain small developments while providing the small-scale developer a means of gaining commitment without undue financial risk. This process will at the same time afford the neighborhood an involvement prior to final commitment.

From this language we can discern it was the intent of the board to create a new "small-scale" PUD and to facilitate its use by the developers of such PUDs through an expedited application process. The amendment further added to § 9-101 C. this language:

The maximum size authorized for filing of short form planned unit development applications shall be 5.0 acres.

In 1984, Ordinance No. 14,604 was passed. It added the following to § 9-101 C.:

There is no minimum size for the Short Form Planned Unit Development applications.

With these two amendments, § 9-101 C. now reads as follows:

Minimum size: Eligible properties must normally be 2.0 acres or larger in size (gross acreage). Slightly smaller parcels may be eligible, provided the applicant can show that the proposed planned unit development can meet the intent and regulations of this article without injury to the public health, safety, and welfare. The maximum size authorized for filing of short form planned unit development applications shall be 5.0 acres. There is no minimum size for the Short Form Planned Unit Development applications.

The appellant contends a lot containing only .16 acres may not be the subject of a PUD for we must read the ordinance as saying any PUD must be on a lot larger than two acres and that, if the short form application is used, the lot may be no larger than five acres. He contends the last sentence added means there is no minimum lot size for use of the short form application but that that language does not repeal the initial requirement that a PUD be on a lot at least two acres in size.

We agree with the appellant's citations to cases showing that we apply the same statutory construction rules to ordinances as we apply to statutes, *Helena* v. *Russwurm*, 188 Ark. 968, 68 S.W.2d 1009 (1934), and that when there is the possibility of more than one construction we will construe it in such a way as to give effect to all its parts, if possible, *Commercial Printing Co.* v. *Rush*, 261 Ark. 468, 549 S.W.2d 790 (1977), and if possible, to every word used. *Locke* v. *Cook*, 245 Ark. 787, 434 S.W.2d 598 (1968). However, we do not find that the appellant's construction is the only one which would give effect to those canons of construction in this case, and we believe the meaning we ascribe to the quoted section comes much closer to what we perceive to have been the board's intent.

The last amendment, adding the statement that "[t]here is no minimum size for the short form planned unit development applications" is highly ambiguous. It could be read as saying the

applications need not be on paper as large as 8½ by 11 inches or that they need not be more than one page or more than ten words. However, when combined with the sentence before it, it becomes apparent that "minimum size" was meant to refer to the size of the lot with respect to which a short form PUD application may be filed. That does not yet resolve the issue before us, however, as we have yet to say whether those two sentences should be read as dealing only with the application process rather than the fundamental PUD requirements.

■ The question is answered by looking at the entire ordinance and realizing that the board's intent by permitting short form applications was to create a new kind of PUD for small properties. A clear indication of that is in the amendment to § 9-101 A. where there was an attempt to delineate the small scale or "short form PUD" from the one where there is a need to combine subdivision and zoning review, obviously dealing with large scale developments. It becomes even clearer upon reading the caption or description of Ordinance No. 14,604 which adopts the language stating there would be no minimum size for short form PUD applications. The caption says the amending ordinance deals with ". . . minimum size requirements for short form planned unit developments."

While the ordinance is not a masterpiece of draftsmanship, it is clear enough for us, using the interpretation principles suggested by the appellant, to interpret it as the chancellor apparently did.

Affirmed.