The Honorable Larry Jegley, Prosecuting Attorney Sixth Judicial District 122 South Broadway Little Rock, Arkansas 72201
Dear Mr. Jegley:
You have requested an Attorney General opinion concerning Ordinance No. 17,794, recently passed by the Little Rock Board of Directors, authorizing the city attorney to establish a system for collecting hot checks.
Regarding this ordinance and the related state laws, you have presented the following questions:
 (1) Assuming arguendo that Ordinance No. 17,794 was validly passed, does it, by authorizing a hot check program and the collection of hot checks by the city attorney, violate state statutory or constitutional law in light of Attorney General Opinion No. 91-048, and A.C.A. §§ 16-21-103, 16-21-1109, 16-21-115, 21-6-411, and 16-21-120, and especially in light of the fact that the 6th District prosecutor has explicitly refused to grant the city authority to prosecute hot checks?
 (2) If the answer to Question 1 is "yes," does the operation of the program subject the city attorney to an illegal exaction action pursuant to article 16, § 13 of the Arkansas Constitution? What other legal remedies are available to attack the city hot check program legally, and who may bring the actions? (Quo warranto by either the prosecutor or Attorney General? Mandamus by the prosecutor or Attorney General? Injunctive relief associated with any of the above?)
 (3) If the answer to Question 1 is "no," please state your opinion as to why the ordinance does not violate state statutes or constitutional provisions in light of the prosecutor's withholding of permission to prosecute.
 (4) If the answer to Question 1 is "no," is the ordinance defective due to the erroneous reference to A.C.A. § "21-6-416" or due to its enactment with an emergency clause, despite the existence of the prosecutor's hot check program?
 (5) Is there any constitutional or legal defect in A.C.A. § 16-21-120, such as problems under Amendment 14 to the Arkansas Constitution (special or local legislation), or due process problems under the U.S Constitution? Does A.C.A. § 16-21-120 specifically authorize any and all prosecuting attorneys' offices to establish a hot check program and expend the funds in a discretionary manner?
 (6) Is there any constitutional or legal defect in A.C.A. § 16-21-1109, such as problems under Amendment 14 to the Arkansas Constitution (special or local legislation), or due process problems under the U.S Constitution? Does A.C.A. § 16-21-1109 legally authorize the 6th Judicial District to establish a hot check program pursuant to other state statutes and to expend the funds in official uses for the benefits of the office?
 (7) Is there any legal problem with the prosecuting attorney delegating the power to prosecute certain misdemeanor cases to the city attorney without delegating the power to prosecute all such cases? That is, may the prosecutor delegate the power to try traffic cases only, or hot check cases only, or other misdemeanor cases only?
 (8) Is there any legal problem with the prosecutor's office hot check program utilizing a specific municipal court which has the ability to effectively serve warrants and efficiently try hot check cases since such court has county-wide jurisdiction to try any misdemeanor case arising within the county?
RESPONSE
Before responding to your specific questions, I must note at the outset that your questions, considered as a whole, appear to address the larger question of the scope of the duties and jurisdiction of both prosecuting attorneys and city attorneys. The Attorney General does not have the authority to define the scope of the duties or jurisdiction of either of these offices. I therefore will not attempt to do so. Accordingly, the views expressed in this opinion should not be interpreted as such. Only a court or the legislature can make a determination of that nature.
I am also not authorized to resolve definitively any lack of clarity in the law or dispute between city attorneys and prosecutors concerning the authority to prosecute hot check violations. Again, such matters can only be resolved definitively through legislation or judicial decision.
Nevertheless, pending such legislative or judicial clarification of that general issue, I will address your specific legal questions and analyze them on the basis of the sources of law that are available to me.
Question 1 — Assuming arguendo that Ordinance No. 17,794 was validlypassed, does it, by authorizing a hot check program and the collection ofhot checks by the city attorney, violate state statutory orconstitutional law in light of Attorney General Opinion No. 91-048, andA.C.A. §§ 16-21-103, 16-21-1109, 16-21-115, 21-6-411, and 16-21-120, andespecially in light of the fact that the 6th District prosecutor hasexplicitly refused to grant the city authority to prosecute hot checks?
The question of whether ordinances such as Ordinance No. 17,794 violate state statutory or constitutional law has not been addressed by a court and therefore currently remains unresolved.
Some existing laws can provide guidance, however, in analyzing this question. Cities are explicitly empowered to enact ordinances prohibiting and punishing any act that is also a misdemeanor under state law. They are also empowered to prescribe penalties for violations of city ordinances, and to prosecute to enforce those ordinances. The sources of these powers are A.C.A. §§ 14-55-501, -502, and -601 respectively, which state as follows:
14-55-501. Authority generally.
 The town or city council in all cities or incorporated towns in this state are authorized and empowered to prohibit and punish any act, matter, or thing which the laws of this state make a misdemeanor.
A.C.A. § 14-55-501.
14-55-502. State law to be followed.
 (a) The town or city council in all cities or incorporated towns in this state are authorized and empowered to prescribe penalties for all offenses in violating any ordinance of the city or town not exceeding the penalties prescribed for similar offenses against the state laws by the statutes of this state.
 (b) It shall be unlawful for any town or city council in this state to prescribe, by city ordinance, less severe penalties for all offenses in violation of any ordinance of the city or town than are prescribed for similar offenses against the state laws by the statutes of this state.
A.C.A. § 14-55-502.
14-55-601. Power to enforce generally.
 (a) Bylaws and ordinances of municipal corporations may be enforced by the imposition of fines, forfeitures, and penalties on any person offending against or violating them.
 (b)(1) The fine, penalty, or forfeiture may be prescribed in each particular bylaw or ordinance, or by a general bylaw or ordinance made for that purpose.
 (2) Municipal corporations shall have power to provide in like manner for the prosecution, recovery, and collection of the fines, penalties, and forfeitures.
A.C.A. § 14-55-601.
Although, again, the question has not been decided by a court, Ordinance No. 17,794 appears to fall within the authority granted in the above-quoted statutes. It prohibits and punishes an act that constitutes a misdemeanor under state law, i.e., the writing of a hot check in an amount not exceeding $200.00. See A.C.A. § 5-37-305(a); A.C.A. §5-1-107. Moreover, Ordinance No. 17,794 prescribes penalties that neither exceed nor are less severe than the penalties prescribed by state law for the same act in violation of state law. See A.C.A. § 5-4-401; A.C.A. §5-4-201(b). Finally, Ordinance No. 17,794, by allowing the city attorney to prosecute violations, provides a means of enforcement, as authorized by state law.
You have specifically inquired as to whether A.C.A. §§ 16-21-103,16-21-1109, 16-21-115, 21-6-411, and 16-21-120, and Attorney General Opinion No. 91-048 nevertheless have the effect of rendering Ordinance No. 17,794 unlawful. It is my opinion, as explained more fully below, that they do not.
All of the cited statutes address and deal with the prosecutor's authority under state law and do not address the city attorney's authority under city ordinance, as authorized by state law. More specifically, A.C.A. § 16-21-103 requires the prosecutor to prosecute criminal actions in which the state or county may be concerned (i.e., state law violations). A.C.A. § 16-21-1109 authorizes the prosecutor of the 6th Judicial District to establish a hot check program pursuant to state law. A.C.A. § 16-21-115 authorizes the prosecutor to delegate to the city attorney the authority to prosecute misdemeanor violations of state law. A.C.A. § 21-6-411 authorizes all prosecutors to collect a fee for the processing of bad checks under state law. A.C.A. § 16-21-120
addresses the disposition of fees collected by prosecutors for collecting and processing bad checks pursuant to state law. None of the foregoing statutes addresses or deals with the authority of the city attorney to prosecute violations of city ordinances.
Moreover, Attorney General Opinion No. 91-048 does not address the situation you have described. That opinion dealt with the question of a city attorney's authority to prosecute hot check violations pursuant to state law, rather than pursuant to a city ordinance. The city ordinance at issue in that opinion, unlike Ordinance No. 17,794, was one that did not independently make hot check violations municipal offenses. Rather, it simply authorized the city attorney to prosecute violations of the state hot check law. For that reason, the prosecutor's delegation of authority to prosecute was required. Such delegation is not required for the city attorney to be empowered to prosecute violations of city ordinance. Accordingly, Attorney General Opinion No. 91-048 has no bearing on your question.
It is my understanding that prosecutors have specific efficiency-related concerns based on the fact that hot check programs operated by cities would not be able to offer merchants the full range of prosecutorial services, in that they cannot prosecute felony hot check offenses, they do not have sufficient numbers of personnel, and they cannot aggregate misdemeanor hot check offenses into felonies. These are all quite valid concerns, and should be addressed legislatively. Any legislative remedy that is sought must specifically address the authority that is currently granted to cities by state law to prosecute violations of city ordinances.
I reiterate that the question of the legality of ordinances such as Ordinance No. 17,794 can only be answered definitively by a court, but under the sources of law currently available, the ordinance appears to be authorized by state law.
Question 2 — If the answer to Question 1 is "yes," does the operation ofthe program subject the city attorney to an illegal exaction actionpursuant to article 16, § 13 of the Arkansas Constitution? What otherlegal remedies are available to attack the city hot check programlegally, and who may bring the actions? (Quo warranto by either theprosecutor or Attorney General? Mandamus by the prosecutor or AttorneyGeneral? Injunctive relief associated with any of the above?)
Because I have opined that Ordinance No. 17,794 appears to be authorized by law, response to Question 2 is unnecessary.
Question 3 — If the answer to Question 1 is "no," please state youropinion as to why the ordinance does not violate state statutes orconstitutional provisions in light of the prosecutor's withholding ofpermission to prosecute.
I opined in response to Question 1 that the legality of ordinances such as Ordinance No. 17.794 currently remains unresolved, in that the question has not yet been addressed by a court. I also pointed out that under the sources of law that are currently available for analysis of this question, the ordinance appears to be authorized by state law. For the basis of this appearance of authorization, see response to Question 1.
Question 4 — If the answer to Question 1 is "no," is the ordinancedefective due to the erroneous reference to A.C.A. § "21-6-416" or due toits enactment with an emergency clause, despite the existence of theprosecutor's hot check program?
It is my opinion that Ordinance No. 17,794 is not defective, either because of its erroneous reference to A.C.A. § "21-6-416" or because of its enactment with an emergency clause, despite the existence of the prosecutor's hot check program.
The Erroneous Reference
Ordinance No. 17,794, Section 6, states: "In addition to the fines and costs provided by law, the City Attorney may collect a fee, pursuant toArk. Code Ann. § 21-6-416 and Ark. Code Ann. § 14-43-410, from any person issuing a hot check as described in this ordinance for all prosecutions tried in municipal court, as follows. . . ." (emphasis added). One of the referenced statutes, "Ark. Code Ann. § 21-6-416," does not exist. It is my opinion that this error does not render Ordinance No. 17,794 invalid.
The Arkansas Supreme Court has held that it is appropriate, in interpreting city ordinances, to apply the same rules of construction as are applied in interpreting state statutes. Stricklin v. Hays,332 Ark. 270, ___ S.W.2d ___ (1998); Tackett v. Hess, 291 Ark. 239,723 S.W.2d 833 (1987). One of the rules that the court has applied in interpreting state statutes is that which holds that a drafting error cannot be allowed to circumvent the intent of the legislation. SeeCitizens to Establish A Reform Party v. Priest, 325 Ark. 257,926 S.W.2d 432 (1996). The court has further held that erroneous words that the legislature has inadvertently left in a statute, or that are unnecessary or serve no useful purpose may be disregarded. Id. at 264, citing City of Fort Smith v. Tate,311 Ark. 405, 844 S.W.2d 356 (1993); 2A N.J. Singer Sutherland Statutory Construction, § 47.37 (5th ed. 1994). Finally, one of the court's longstanding rules of statutory construction is that where it is obvious that the legislature did not intend to use a particular word that is written in a statute, and where it is further apparent what word they did intend to use, the courts should correct the mistake by substituting the word intended for the word used. See Langford v. Brand, CountyJudge, 274 Ark. 426, 626 S.W.2d 198 (1982); Haney v. State, 34 Ark. 263
(1879).
It is quite obvious that in authorizing the city attorney to collect fees for processing hot checks, the city board intended to refer to A.C.A. §21-6-411, which is the statute that sets forth a fee schedule for the processing of hot checks. I must therefore conclude that because the board's intent is obvious, the erroneous reference in Ordinance No. 17,794 to "Ark. Code Ann. § 21-6-416" cannot be used to circumvent that intent and does not render the ordinance invalid.
The Emergency Clause
Your question raises the issue of whether the inclusion of an emergency clause in Ordinance No. 17,794 renders the ordinance invalid in light of the fact that the prosecutor's hot check program was already in operation, thus indicating that a true emergency regarding the collection of hot checks may not have really existed.
As explained more fully below, the question of whether an emergency clause is warranted is a question of fact, and I therefore cannot opine definitively as to whether an emergency existed with regard to the collection of hot checks. Nevertheless, it is my opinion, as further explained below, that even if it were found that no emergency existed, the inclusion of the emergency clause in Ordinance No. 17,794 did not have the effect of rendering the ordinance invalid.
The Arkansas Supreme Court has held that the test for determining whether a true emergency exists with regard to particular legislation is whether reasonable people differ on the issue. If so, it is held that no emergency existed, and the emergency clause in question is invalidated.Priest v. Polk, 322 Ark. 673, 912 S.W.2d 902 (1995); Mann v. Lowry,227 Ark. 1132, 303 S.W.2d 889 (1957). A determination of whether reasonable people would differ on the issue of whether a true emergency existed would require a review of all the relevant facts attendant to the situation. The Attorney General does not engage in factual determinations of this nature. Only a court can determine definitively whether a true emergency existed with regard to the collection of hot checks.
Even if a court should determine that no such emergency existed, that determination would not render the ordinance invalid. The Arkansas Supreme Court has held that the effect of the invalidation of an emergency clause is simply that instead of the legislation in question taking effect immediately, it takes effect as though it did not include an emergency clause. Beaumont v. Faubus, 239 Ark. 801, 394 S.W.2d 478
(1965). The invalidation of an emergency clause therefore does not render the legislation to which it is attached invalid.
For these reasons, I must conclude that the inclusion of an emergency clause in Ordinance No. 17,794 cannot affect the validity of the ordinance.
Question 5 — Is there any constitutional or legal defect in A.C.A. §16-21-120, such as problems under Amendment 14 to the ArkansasConstitution (special or local legislation), or due process problemsunder the U.S. Constitution? Does A.C.A. § 16-21-120 specificallyauthorize any and all prosecuting attorneys' offices to establish a hotcheck program and expend the funds in a discretionary manner?
A.C.A. § 16-21-120 states:
Fees from persons issuing bad checks — Special fund
 Fees collected under this act shall be deposited in a special fund to be administered by the prosecuting attorney.
 (b) Expenditures from this fund shall be at the sole discretion of the prosecuting attorney and may be used only to defray the salaries and expenses of the prosecuting attorney's office, but in no event may the prosecuting attorney or any deputy prosecutor who is paid on the fee system supplement his or her own salary, nor may the prosecuting attorney increase any employee's salary, without approval of the quorum court of the county where employed from this fund.
 (c) The prosecuting attorney shall annually prepare and present to the quorum courts of each county within his or her district a report showing all receipts and disbursements from the special fund created by this section.
 (d) Nothing in this act shall be construed to decrease the total salaries, expenses, and allowances which a prosecuting attorney's office is receiving as of June 26, 1985.
A.C.A. § 16-21-120.
The constitutionality of A.C.A. § 16-21-120 under the Arkansas and U.S. constitutions has not been addressed by a court, and therefore currently remains unresolved. Nevertheless, I will set forth the applicable law under which the issue can be evaluated.
It must be noted at the outset of this discussion (and in connection with the responses to Question 6) that legislation is presumed to be constitutional and will be upheld if the courts can find any possible way to construe the legislation so that it meets the tests of constitutionality. Arnold v. Kemp, 306 Ark. 294, 813 S.W.2d 770 (1991). Moreover, the party challenging the legislation has the burden of establishing its constitutional infirmities. Holland v. Willis,293 Ark. 518, 739 S.W.2d 529 (1987).
Arkansas Constitutional Amendment 14 — Special and Local Legislation
Amendment 14 to the Arkansas Constitution prohibits the enactment of "special" or "local" legislation. The Arkansas Supreme Court has held that legislation is unconstitutionally "special" if "by some inherent limitation or classification it arbitrarily separates some person, place, or thing from those upon which, but for such separation, it would operate, and the legislation is local if it applies to any division or subdivision of the state less than the whole." Owen v. Dalton,296 Ark. 351, 354, 757 S.W.2d 921 (1988). Accord, McCutchen v. Huckabee,328 Ark. 202, 943 S.W.2d 225 (1997). A determination of whether legislation creates an "arbitrary" distinction (thus rendering the legislation impermissible) is made by an application of the "rational basis" test. That is, the legislation is impermissibly "special" if the distinction or classification that it creates bears no rational relation to the purpose of the law. Streight v. Ragland, 280 Ark. 206, 655 S.W.2d 459 (1983).
In this regard, the court has stated:
 An act is not local or special simply because it is limited to a class consisting of less than all citizens of the state or less than all of its territory. However, generality ends and specialty begins where the class established by the act has no reasonable relation to the purpose or subject matter of the enactment or omits from its operation persons or areas which would fall naturally into the class to which the act is limited.
Littleton v. Blanton, 281 Ark. 395, 398-99, 665 S.W.2d 239 (1984).Accord, McCutchen v. Huckabee, 328 Ark. 202, 943 S.W.2d 225 (1997).
It should be noted that with regard to the rational basis standard generally, the courts will find that a rational basis exists without requiring a showing of an actual rational basis, if any conceivable rational basis for the scheme can be adduced — even a hypothetical one.See, e.g., Medlock v. Leathers, 311 Ark. 175, 842 S.W.2d 428 (1992), reh. denied, 1993.
It is likely that A.C.A. § 16-21-120 would not be deemed by a court to create a classification, inasmuch as it applies to all prosecutors throughout the state. However, even if this statute were deemed to create a classification, the only classification that it could be interpreted to create is a classification of prosecutors as opposed to non-prosecutors. It is not difficult to adduce a possible rational basis that the legislature may have had in mind for this type of classification. The lawmakers likely allowed prosecutors (as opposed to non-prosecutors) to control this particular fund on the grounds that it is to be used in part for expenses incurred by prosecutors in handling the cases that create the fund. In light of the fact that it is possible to formulate a rational basis for any possible classification created by A.C.A. §16-21-120, and in light of the presumption of constitutionality, it is likely that, if presented with the question, a court would not find that this statute constitutes unconstitutional "special" or "local" legislation.
U.S. Constitution — Due Process
The documentation attached to your correspondence appears to indicate that the possible U.S. constitutional concern with A.C.A. § 16-21-120
arises out of the fact that it grants the prosecutor discretionary control over the administration of the fund created by the statute. The constitutional danger in such a situation is reflected in cases such asTumey v. Ohio, 273 U.S. 510 (1927). In that case, the United States Supreme Court held that a mayor who received a portion of fines levied on convicted persons could not preside over their trials without violating the constitutional principle of due process. Similarly, the Court held inWard v. Village of Monroeville, 409 U.S. 57 (1972), that it is a violation of due process for a mayor to sit as a judge when a major part of the village income is derived from fines, forfeitures, costs, and fees.
The Arkansas Court of Appeals had occasion to address this due process issue in Lambert v. Baldor Elec., 44 Ark. App. 117, 868 S.W.2d 513
(1993). There, the appellant argued that the Workers' Compensation Commission was not impartial enough to judge his claim for compensation out of the "Second Injury Fund," because the Commission had administrative control over that fund. The appellant further argued that to allow the Commission to judge his claim would violate the constitutional principle of due process. The Arkansas court rejected this argument. In analyzing the issue, the court noted that the U.S. Supreme Court, in Tumey, supra, had set forth the following test for determining such claims:
 [T]he test as to whether due process is violated is whether the situation is one "which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the state and the accused."
Baldor Elec., 44 Ark. App 117, 120, quoting Tumey, supra,273 U.S. at 532.
The Arkansas court went on to note that the U.S. Supreme Court, in Ward,supra, applying the above quoted standard, ruled that, "due to the mayor's interest in maintaining village finances and the high level of revenue from the mayor's court, the `possible temptation' to rule improperly constitutionally prevented the mayor from acting as judge."Baldor Elec., 44 Ark. App. 117, 120.
The Baldor Elec. court then cited cases from other states in which the same due process claim was asserted but rejected on the grounds that the officials in question had no "`direct, personal, substantial, pecuniary interest' in the outcome of claims," and therefore had no temptation to administer the fund in question inappropriately. Id., quoting Ison v.Western Vegetable Distrib., 59 P.2d 649, 656 (Ariz. 1936). The Baldor
court also found it significant in the cases upon which it relied that the salaries of the officials in question could be neither increased nor decreased as a result of their decisions controlling the fund at issue.
If an Arkansas court were to apply the foregoing guidelines to A.C.A. §16-21-120, it is unlikely that the court would find that this statute violates the U.S. constitutional principle of due process. First, the prosecutors who have administrative control over the fund created by the statute do not make the final decision as to the guilt of those who are required to pay into the fund. In addition, the prosecutors have no "direct, personal, substantial, pecuniary interest" in the fund. Moreover, it is particularly significant that the statute specifies that no prosecutor's or deputy prosecutor's salary can be supplemented from the fund, and that the quorum court must approve the use of the fund to increase any other employee's compensation. These factors would likely be found by a court to alleviate due process concerns.
It should be noted, of course, that constitutional statutes can be administered and applied in an unconstitutional manner. The particular facts of each case must be reviewed before a conclusive determination can be made concerning the constitutionality and other legality of any statute. I reiterate, however, the presumption of the constitutionality of all legislation.
You have also asked whether A.C.A. § 16-21-120 authorizes all prosecutors to establish a hot check program and to expend the funds in a discretionary manner. It is my opinion that A.C.A. § 16-21-120 creates a fund from fees collected by all prosecutors in the processing of hot checks, and allows all prosecutors some discretionary control over the administration of that fund. However, as noted above, the prosecutor's discretion is limited to seeing that the fund is used only to defray the salaries and expenses of the prosecutor's office — but not the salaries of the prosecutor or any deputy prosecutor.
Question 6 — Is there any constitutional or legal defect in A.C.A. §16-21-1109, such as problems under Amendment 14 to the ArkansasConstitution (special or local legislation), or due process problemsunder the U.S Constitution? Does A.C.A. § 16-21-1109 legally authorizethe 6th Judicial District to establish a hot check program pursuant toother state statutes and to expend the funds in official uses for thebenefits of the office?
A.C.A. § 16-21-1109 states:
Hot check funds.
 The Office of the Prosecuting Attorney of the Sixth Judicial District is hereby authorized to establish a hot check program pursuant to state statute to collect fees for the hot check fund as authorized by the General Assembly and to expend those funds in official uses for the benefit of the office.
A.C.A. § 16-21-1109.
Arkansas Constitutional Amendment 14 — Special and Local Legislation
As noted previously, the Arkansas Supreme Court has held that legislation is unconstitutionally "special" if "by some inherent limitation or classification it arbitrarily separates some person, place, or thing from those upon which, but for such separation, it would operate, and the legislation is local if it applies to any division or subdivision of the state less than the whole." Owen v. Dalton, 296 Ark. 351, 354,757 S.W.2d 921 (1988). Accord, McCutchen v. Huckabee, 328 Ark. 202,943 S.W.2d 225 (1997).
The provisions of A.C.A. § 16-21-1109 authorize the prosecutor in the 6th Judicial District to establish a hot check program for the collection of fees in connection with the processing of hot checks pursuant to state law. This statute was enacted as a part of Act 997 of 1993, which dealt with various funding and organizational matters for the 6th Judicial District. If presented with the question, it is unlikely that a court would find that A.C.A. § 16-21-1109
creates an arbitrary classification within the meaning of the Arkansas Supreme Court's decisions concerning special legislation. Of significance is the fact that the statute does not affect prosecutors in other judicial districts. They, of course, have the authority to prosecute in connection with hot checks pursuant to state law, see A.C.A. § 16-21-120 and A.C.A. § 21-6-411, and that authority is not diminished in any way by A.C.A. §16-21-1109. Rather, A.C.A. § 16-21-1109 merely expressly authorizes the prosecutor in the 6th Judicial District to establish a hot check program — without regard to any other judicial district. Accordingly, prosecutors in judicial districts other than the 6th Judicial District are not affected either by the existence or the non-existence of A.C.A. §16-21-1109. It would therefore be difficult to establish that A.C.A. §16-21-1109 is a statute about which it could be said that "by some inherent limitation or classification it arbitrarily separates some person, place, or thing from those upon which, but for such separation, it would operate."
Even if A.C.A. § 16-21-1109 were held to create a questionable classification or to apply in a questionable manner to less than all of the state, it is unlikely that a court would find that it does so in a constitutionally impermissible manner. As noted above, the determining factor is not so much whether the legislation in question creates a classification or applies to less than all of the state, but rather, whether it does so without a rational basis. Id. Again, the courts will find a rational basis if even a hypothetical one can be adduced.
The question, then, would be whether it is possible to adduce a rational basis upon which the provisions of A.C.A. § 16-21-1109 were founded. The legislature might well have granted this authorization only to the 6th
Judicial District on the grounds that because of the greater volume of hot checks in that district, only that district had a need for a formal and separate system of fee collection. In light of the the fact that it is possible to adduce a rational basis for any classification that A.C.A. § 16-21-1109 might be deemed to create, and in light of the presumption of constitutionality, it is unlikely that a court would hold that his statute constitutes unconstitutional "special" or "local" legislation.
Question 7 — Is there any legal problem with the prosecuting attorneydelegating the power to prosecute certain misdemeanor cases to the cityattorney without delegating the power to prosecute all such cases? Thatis, may the prosecutor delegate the power to try traffic cases only, orhot check cases only, or other misdemeanor cases only?
The prosecutor's authority to delegate prosecutorial power to the city attorney is stated in A.C.A. § 16-21-115, as follows:
City attorneys.
 A prosecuting attorney may designate the duly elected or appointed city attorney of any municipality within the prosecutor's district to prosecute in the name of the state in municipal or other corporation courts violations of state misdemeanor laws which violations occurred within the limits of the municipality if the city attorney agrees to the appointment.
A.C.A. § 16-21-115.
The Arkansas Supreme Court has not interpreted this statute or addressed the question you have raised. The issue can only be conclusively determined through legislative clarification or judicial interpretation.
Pending such legislative or judicial guidance, it is my opinion that the prosecuting attorney may delegate selectively. That is, the prosecutor may, in my opinion, delegate the authority to handle only certain types of cases, and not others.
I base this conclusion on the fact that the delegation statute quoted above does not place conditions on the authority of the prosecutor to delegate to the city attorney. The language of the Arkansas Rules of Criminal Procedure bolsters this position. Those rules define the term "prosecuting attorney" as follows:
RULE 1.6. Definitions.
 (b) "Prosecuting attorney" means any person legally elected, appointed, or otherwise designated or charged generally or specially
with the duty of prosecuting persons accused of crime or traffic offenses, and includes, but is not limited to:
* * *
(ii) a city attorney and any of his deputies or assistants.
Rule 1.6, Ark. Rules of Cr. P. (emphasis added).
The above-quoted definition indicates that the Rules of Criminal Procedure clearly contemplate that a city attorney can be designated either to prosecute all types of cases or to prosecute specific cases.
Because no source of law presents any other indication, I conclude that the prosecutor can, under the authority of A.C.A. § 16-21-115, delegate the power to prosecute state offenses selectively. That is, the prosecutor can, in my opinion, delegate the power to prosecute some state offenses, but not others.
Question 8 — Is there any legal problem with the prosecutor's office hotcheck program utilizing a specific municipal court which has the abilityto effectively serve warrants and efficiently try hot check cases sincesuch court has county-wide jurisdiction to try any misdemeanor casearising within the county?
It is my opinion that there is no legal prohibition against a prosecutor's utilizing a particular municipal court for the purpose of prosecuting state misdemeanor cases. As you have noted, municipal courts have county-wide jurisdiction. It has been judicially recognized that such courts are "all equally free to hear any case arising from any place in the county." Beshear v. Clark, 292 Ark. 47, 50, 728 S.W.2d 165 (1987) (Hickman, J., concurring). The opinion went on to state: "For example, a citizen of Little Rock can be arrested in North Little Rock and tried in Sherwood." Id.
Moreover, with regard to the prosecutor's delegation of state misdemeanor cases to city attorneys pursuant to A.C.A. § 16-21-115 (quoted above in response to Question 7), the language of that statute appears to indicate that the prosecutor should have discretion in his or her choice of municipal attorneys. This indication is reflected in the statute's explicit reference to "any" municipality.
My conclusion regarding this issue is bolstered by a factor stated in response to Question 7. As noted therein, A.C.A. § 16-21-115 does not place conditions or limitations on the prosecutor's authority to delegate state misdemeanor cases.
For these reasons, I conclude that the prosecutor has discretion to utilize the municipal court of his or her choice for the purpose of prosecuting state misdemeanor cases.
Concluding Remarks
I reiterate that this opinion should not be interpreted as any attempt to define the scope of the duties or jurisdiction of either prosecuting attorneys of city attorneys. Only a court or the legislature can definitively address such matters.
I also reiterate that any meaningful remedy for the concerns of the various parties who are interested in the issues you have raised must ultimately come from the legislature or a court. This opinion is limited to addressing specific legal questions on the basis of existing legal authority.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh